58 CCPA

**RELIANCE TRADING CORPORATION OF ILLINOIS, Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 5381, C.A.D. 1020.**

United States Court of Customs and Patent Appeals.

May 6, 1971.

**1378**

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant. Joseph Schwartz and Irving Levine, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Joseph I. Liebman for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and JONES, Judge, Court of Claims, sitting by designation.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, First Division, Appellate Term, 63 Cust.Ct. 675, A.R.D. 260 (1969), affirming the judgment of a single judge sitting in reappraisement, 279 F.Supp. 452 (1968). We affirm.

## STATEMENT OF THE CASE

The goods involved are artificial flowers imported from Hong Kong in July of 1962. Export value, 19 U.S.C. § 1401a(b), is conceded to be the proper basis for appraisement; the controversy here is over the appraiser's addition of 11% to the entered prices of the goods, which 11% the importer maintains was not part of the export value of the goods.

Appellant Reliance Trading Corporation of Illinois (Reliance of Illinois) purchased the goods from the Reliance Trading Corporation of Hong Kong (Reliance of Hong Kong), and the record shows that during 1962, 66% of Reliance of Hong Kong's export sales to the United States were made to Reliance of Illinois under an agreement by which appellant purchased its goods from Reliance of Hong Kong at rates 11% below that which other importers bought the remaining 34% of Reliance of Hong Kong's export sales to the United States. This agreement provided that Reliance of Illinois was to "use its best efforts to promote the sale of the HONG KONG COMPANY'S products" in the United States, and both an affidavit by the sole proprietor of Reliance of Hong Kong and testimony by the then-president of Reliance of Illinois indicate that Reliance of Illinois in fact showed samples to prospective buyers and handled complaints for dissatisfied buyers of Reliance of Hong Kong's artificial flowers. Additionally, this agreement provided that 10% of the price at which other American importers purchased artificial flowers from Reliance of Hong Kong (111% of the prices at which Reliance of Illinois would have bought the same goods) was to be paid Reliance of Illinois as a "commission," leaving Reliance of Hong Kong with 99.9% of what it would have received from Reliance of Illinois for the same sale.*

Appellant's construction of the above arrangement is that it acted as an agent for the other American importers and that the extra 11% which they paid Reliance of Hong Kong was actually its commission for its services to *them*, a commission which Reliance of Hong Kong obligingly collected for it. Accordingly, it argues that the 11% paid Reliance of Hong Kong by the other American importers but not by it was not a part of the value of the goods but rather was the value of its services in the United States, rendered to other United States firms.

---

* The figures do not come out exactly, but the parties are fighting about the 11%, not the one-tenth of one percent.

The single judge, noting that the other importers had not bargained for the services of Reliance of Illinois and had no option to decline the services and buy the flowers at the prices extended to Reliance of Illinois, concluded that Reliance of Illinois "was either a selected purchaser or agent in the United States of Reliance, Hong Kong." He then held that, if Reliance of Illinois were to be considered a selected purchaser of Reliance of Hong Kong's, the price it paid could not be considered the export value of the goods because the goods were also sold at wholesale to others, citing Aceto Chemical Co. v. United States, 51 CCPA 121, C.A.D. 846 (1964), and that, if Reliance of Illinois were to be considered the agent in the United States of Reliance of Hong Kong, the 11% was its commission, which it termed "part of the seller's general expense of doing business" and thus a part of the export value of the goods, citing Tapetes Luxor, S. A. v. United States, 56 Cust.Ct. 797, A.R.D. 206 (1966), aff'd, 54 CCPA 116, C.A.D. 921 (1967).

The appellate term affirmed, adopting the single judge's agency theory and also holding that the importer had failed to establish a basis for an alternative appraisement in that (1) it had failed to prove the "usual wholesale quantities" in which other Hong Kong exporters sold such or similar merchandise for exportation to the United States and (2) it had failed to establish the "ordinary course of trade" in artificial flowers for export from Hong Kong.

## OPINION

While we do not necessarily agree with the lower court's characterization of the relationship between Reliance of Hong Kong and Reliance of Illinois as that of principal and agent, see B & W Wholesale Co. v. United States, 436 F.2d 1399, 58 CCPA 399, C.A.D. 1010, 5 Cust.Bull. & Dec. No. 8, pp. 21, 23 (Feb. 4, 1971), we do agree that there is, at the very least, "some substantial evidence" in the record in support of the lower court's conclusion that the 11% which Reliance of Illinois did not pay Reliance of Hong Kong but which Reliance of Hong Kong collected from its other American vendees and turned over to Reliance of Illinois (ignoring the one-tenth of one per cent discrepancy) was the consideration given Reliance of Illinois by Reliance of Hong Kong in return for the former's services in promoting and facilitating the sale of the latter's goods in the United States and thus "part of the seller's general expense of doing business." We note appellant's argument that

* * * the 11% which the appraiser added, and which is the only element of the appraised value in dispute, was not part of the value of the goods in Hong Kong, but was for services rendered by Reliance, Illinois *in the United States*. We submit that payments made by an importer for services rendered by the exporter or his agent in the United States, are not a part of the *export value of the merchandise in the foreign country*.

However, we agree with the appellate term that "The place where the services are performed is not controlling as long as they were considered a part of the price of the merchandise [to the importers which enjoyed no special relationship with Reliance of Hong Kong]." Erb & Gray Scientific, Inc. v. United States, 53 CCPA 46, C.A.D. 875 (1966). Since a price including this commission was the only price at which the goods were available to the importers other than Reliance of Illinois, we hold that the price to those other importers was the export value of the goods in question. Aceto Chemical Co. v. United States, supra.

Accordingly, the judgment of the Customs Court is affirmed.

Affirmed.